UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse    40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

Docket Number(s): 18-1503 _____     _____ Caption [use short title] _____

Motion for: panel and en banc reconsideration under

F.R.A.P. 27(c) and 35

_____

Set forth below precise, complete statement of relief sought:

Appellant moves for panel or en banc reconsideration

of the single-judge order that denied his request for relief

under United States v. Solano, 966 F.3d 184 (2d Cir. 2020), because it

squarely conflicts with United States v. Tapia, 2020 WL 4931148 (2d Cir. Aug.24, 2020)

which granted a similarly-situated defendant's motion.

_____

United States of America v. Johnson

MOVING PARTY: Mark Johnson                          OPPOSING PARTY: United States of America

☐ Plaintiff                     ☐ Defendant

☑ Appellant/Petitioner          ☐ Appellee/Respondent

MOVING ATTORNEY: Alexandra A.E. Shapiro          OPPOSING ATTORNEY: Lauren H. Elbert

[name of attorney, with firm, address, phone number and e-mail]

Shapiro Arato Bach LLP                          U.S. Attorney's Office for the Eastern District of New York

500 Fifth Avenue, 40th Floor, New York, NY 10110          271 Cadman Plaza East, Brooklyn, NY 11201

(212) 257-4880; ashapiro@shapiroarato.com          (718) 254-7577; lauren.elbert@usdoj.gov

Court- Judge/ Agency appealed from: Hon. Nicholas G. Garaufis/ United States District Court for the Eastern District of New York

Please check appropriate boxes:                          FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND
                                                        INJUNCTIONS PENDING APPEAL:

Has movant notified opposing counsel (required by Local Rule 27.1):          Has this request for relief been made below?  ☐ Yes ☐ No
☑ Yes  ☐ No (explain):_____          Has this relief been previously sought in this court?  ☐ Yes ☐ No
_____          Requested return date and explanation of emergency: _____

Opposing counsel's position on motion:          _____
☐ Unopposed ☑ Opposed ☐ Don't Know          _____
Does opposing counsel intend to file a response:          _____
☐ Yes ☐ No ☑ Don't Know          _____

Is oral argument on motion requested?  ☑ Yes ☐ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?  ☑ Yes ☐ No If yes, enter date: 5/31/2019

Signature of Moving Attorney:

/s/ Alexandra A.E. Shapiro  Date: August 31, 2020  Service by: ☑ CM/ECF  ☐ Other [Attach proof of service]

# 18-1503

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA,

*Appellee,*

—against—

MARK JOHNSON,

*Defendant-Appellant.*

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## MOTION OF DEFENDANT-APPELLANT FOR PANEL OR EN BANC RECONSIDERATION OF SINGLE-JUDGE ORDER DENYING LEAVE TO FILE A LATE PETITION FOR PANEL REHEARING

FRANK H. WOHL
JOHN R. WING
LANKLER SIFFERT & WOHL LLP
500 Fifth Avenue, 33rd Floor
New York, New York 10110
(212) 921-8399

ALEXANDRA A.E. SHAPIRO
 *Counsel of Record*
ERIC S. OLNEY
JACOB S. WOLF
SHAPIRO ARATO BACH LLP
500 Fifth Avenue, 40th Floor
New York, New York 10110
(212) 257-4880

*Attorneys for Defendant-Appellant*

# **TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................1

BACKGROUND ........................................................................................3

    A.   Johnson's Trial ..............................................................................3

    B.   Johnson's Appeal ..........................................................................6

    C.   The Subsequent *Solano* Decision .................................................7

    D.   Johnson's *Solano* Motion ..........................................................10

    E.   The *Tapia* Decision ...................................................................12

ARGUMENT ..........................................................................................14

I.    JOHNSON'S CONVICTION WAS PLAINLY
    UNCONSTITUTIONAL UNDER *SOLANO* AND SHOULD
    BE VACATED ........................................................................15

II.   THE DENIAL OF JOHNSON'S *SOLANO* MOTION SQUARELY
    CONFLICTS WITH THIS COURT'S DECISION IN *TAPIA* AND
    UNDERMINES FAIRNESS, INTEGRITY, AND THE PUBLIC
    REPUTATION OF CRIMINAL PROCEEDINGS ....................................19

CONCLUSION ........................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Hughes v. United States*,
  138 S. Ct. 1765 (2018) ......................................................................22

*Sargent v. Columbia Forest Prod., Inc.*,
  75 F.3d 86 (2d Cir. 1996) ..................................................................13

*United States v. Babwah¸*
  972 F.2d 30 (2d Cir. 1992) ................................................................15

*United States v. Balde*,
  943 F.3d 73 (2d Cir. 2019) ................................................................15

*United States v. Brutus*,
  505 F.3d 80 (2d Cir. 2007) ................................................................18

*United States v. Draper*,
  553 F.3d 174 (2d Cir. 2009) ......................................................... 15, 16

*United States v. Edwardo-Franco*,
  885 F.2d 1002 (2d Cir. 1989) ..............................................................3

*United States v. Gaines*,
  457 F.3d 238 (2d Cir. 2006).........................................................8, 18

*United States v. Mehta*,
  919 F.3d 175 (2d Cir. 2019) ..............................................................22

*United States v. Munoz*,
  765 F. App'x 547 (2d Cir. 2019) ................................................. 11, 18

*United States v. Quintana*,
  300 F.3d 1227 (11th Cir. 2002) .........................................................16

*United States v. Solano*,
   966 F.3d 184 (2d Cir. 2020) ......................................................... passim

*United States v. Tapia*,
   2020 WL 4931148 (2d Cir. Aug. 24, 2020) ................................. passim

*United States v. Tapia*,
   799 F. App'x 80 (2d Cir. 2020) .........................................................13

## Rules

Fed. R. App. P. 27(b) ...............................................................................14

Fed. R. App. P. 27(c) ......................................................................... 1, 14

Fed. R. App. P. 35 ............................................................................. 1, 14

Fed. R. App. P. 41(b) ..............................................................................21

# INTRODUCTION

Pursuant to Federal Rules of Appellate Procedure 27(c) and 35, Defendant-Appellant Mark Johnson moves for panel or en banc reconsideration of a single-judge order by Judge Lohier.  The order squarely conflicts with this Court's decision three days later in *United States v. Tapia*, 2020 WL 4931148 (2d Cir. Aug. 24, 2020), granting a similarly-situated defendant the very relief Johnson was denied.  The inconsistent results implicate a bedrock principle of the criminal justice system—the presumption of innocence—and undermine the rule of law and fundamental fairness.  If allowed to stand, the order sends mixed signals to the public about the state of the law in this Circuit and, even more damaging, suggests that there is no "equal justice under law" because similarly-situated defendants received different outcomes for no discernible reason.

Both Johnson and the *Tapia* defendant sought late relief based on *United States v. Solano*, 966 F.3d 184 (2d Cir. 2020).  In *Solano*, this Court reversed a testifying defendant's conviction on plain-error review.  It held that an instruction which implied that the defendant's "interest in the outcome" created a "motive to testify falsely," "erod[ed] the presumption of innocence" and "seriously affect[ed] the fairness, integrity, or public reputation of [the] judicial proceedings."  *Id.* at 197, 200.  Both Johnson and Tapia testified at their trials; in both cases, the jury was given an unconstitutional "interest-in-the-outcome" instruction like the one in

*Solano*; in both cases, as in *Solano*, the defendant's testimony was critical because scienter was hotly disputed. Both defendants sought relief months after losing their appeals, but within 14 days of *Solano*. In both cases, the government did not defend the jury instructions under *Solano* or challenge the materiality of the defendants' testimony; instead, it opposed relief based on pre-*Solano* law and the late timing of the requests. Both claims were subject to equivalent standards of review. Indeed, Tapia faced a significant additional hurdle: the mandate in her case had to be recalled in order to afford relief—a remedy "reserved for exceptional circumstances," *Tapia*, 2020 WL 4931448 at *1—whereas Johnson's mandate has been stayed.

Yet the panel in *Tapia* recalled the mandate and vacated the conviction, whereas the Court never even considered the merits of Johnson's *Solano* claim because a single judge summarily refused to allow him to file it—even though the government effectively conceded that Johnson's conviction was unconstitutional under *Solano*. There is no way to square these decisions, and the result is contrary to the rule of law. Two defendants who were deprived of a fair trial by the same constitutional error, and simultaneously sought relief late in their appeals, now face very different fates: one received a new trial, while the other must serve two years in prison.

2

"The Supreme Court and Courts of Appeals, including this Court, have emphasized repeatedly that…justice must satisfy the appearance of justice." *United States v. Edwardo-Franco*, 885 F.2d 1002, 1005 (2d Cir. 1989). Neither justice nor the appearance of justice will be served if Judge Lohier's order and Johnson's conviction are allowed to stand. This Court should grant reconsideration and vacate his conviction to reconcile the result here with *Tapia*.

## BACKGROUND

### A. Johnson's Trial

Johnson's wire-fraud prosecution arose from a complex foreign-exchange transaction in which Cairn Energy exchanged $3.5 billion for £2.25 billion with HSBC on December 7, 2011. A "fix," whereby parties agree to exchange currencies at a "fix" rate to be published at a specified future time, was used to set the price. With a "fix," banks charge no fee and instead potentially make money by purchasing currency ahead of the "fix" time; if the average purchase price is lower than the published fix rate, the bank makes a profit. Amended Opinion ("Op.") at 6.

The government's principal, "misappropriation" theory was that Johnson breached HSBC's alleged "duty of trust and confidence" to Cairn by purchasing pounds ahead of the "fix." Op.11. The government also alleged that Johnson falsely represented that HSBC would not execute the transaction "in a manner

3

designed to cause the price of the [pound] to spike" and failed to correct a supposedly false statement made by a colleague following the transaction; these alleged falsehoods purportedly deprived Cairn of the "right to control" its assets. (A-28-29).

To prove its case, the government had to establish that "Johnson (1) had an intent to defraud, (2) engaged in a fraudulent scheme to obtain Cairn's money or property 'involving material misrepresentations'…, and (3) used the wires to further the scheme." Op.14. The first two elements were disputed at trial. Johnson denied having any intent to defraud Cairn; argued that he was not involved in any misrepresentations to Cairn; and argued that HSBC had no "duty of trust or confidence" to Cairn. Although the basic facts were established by documentary evidence, the parties vigorously disputed their significance, and in particular what inferences about Johnson's state of mind should be drawn from the events surrounding the execution of the currency exchange.

The government's case lasted eight days, while Johnson's lasted five days. He testified on his own behalf over four days and called character witnesses and an expert witness who testified that HSBC executed the transaction consistent with standard industry practice. The government does not dispute that if believed, Johnson's testimony required an acquittal. Among other things, Johnson testified that he never intended to defraud or harm Cairn; that he had never seen the

4

documents the government claimed established a fiduciary-like "duty" to Cairn; that he did not intentionally seek to "ramp" or spike the price of the pound, and in fact, shortly before the fix time suggested HSBC cease buying pounds to reduce upward pressure on the price; and that he was in New York and unaware that a London colleague's statement on a post-transaction telephone call was false. *See, e.g.*, (Tr.2172, Tr.1859, Tr.1916-17, Tr.2053-54, Tr.2097).[1]

The jury instructions included the following charge regarding testimony of witnesses with an "interest in the outcome," which was given over Johnson's objection to the bolded language:

> In evaluating the credibility of a witness, you should take into account any evidence that the witness may benefit in some way from the outcome of the case. Such *an interest in the outcome creates a motive to testify falsely and may sway the witness to testify in a way that advances his or her own interests*. Therefore, if you find that *any witness* whose testimony you are considering may have *an interest in the outcome of this trial*, then you should bear that factor in mind when evaluating the credibility of his or her testimony and accept it with great care.
>
> This is not to suggest that every witness who has an interest in the outcome of the case will testify falsely. It is for you to decide what extent, if at all, the witness's interest has affected his or her testimony. ….
> In this case, the Defendant had no obligation to testify but chose to do so. You must therefore scrutin[i]ze the Defendant's testimony just as you would the testimony of any other witness *with an interest in the outcome of the case*, taking account all of the factors I have previously described.

---

[1] "Tr." citations to Johnson's testimony are in Exhibit A of Dkt.157-2; "Ex._" signifies Exhibits to Dkt.157-2.

5

(Ex.G (emphasis added)); *see* (Exs.D, E (objections)).

On October 23, 2017, Johnson was convicted of wire fraud and conspiracy. On April 26, 2018, Johnson was sentenced principally to 24 months' imprisonment and a $300,000 fine. (SPA-2-3, 7). The district court remanded Johnson *sua sponte*, but on June 19, 2018, this Court granted bail pending appeal. (Dkt.47).

**B. Johnson's Appeal**

On appeal, Johnson argued that his conduct did not constitute wire fraud or wire-fraud conspiracy. In an opinion issued on September 12, 2019, this Court affirmed. The Court declined to address Johnson's challenge to the misappropriation theory but held the evidence on the "right-to-control" theory sufficient to sustain the conviction. Op.3. The Court concluded under the sufficiency standard—"drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility"—that certain statements Johnson made on an October 13, 2011, call with Cairn's advisor amounted to false representations that HSBC would not "ramp the fix." Op.19. For purposes of this sufficiency review, the Court had no reason to—and did not—consider Johnson's contrary testimony. The Court also held that these statements and an allegedly false statement a colleague made on a post-transaction call were material. Op.21.

6

Johnson filed a timely petition for rehearing and rehearing en banc.

(Dkt.127). On December 16, 2019, the panel issued an amended opinion.

(Dkt.137).

On December 30, 2019, Johnson filed a timely petition for rehearing en

banc. (Dkt.146). The Court denied the petition on January 23, 2020. (Dkt.149).

Johnson moved for a stay of the mandate pending the filing and disposition

of his petition for certiorari in the Supreme Court. This Court granted the motion

on February 21, 2020. (Dkt.154).

On June 19, 2020, Johnson timely filed his petition for certiorari in the

Supreme Court, which was docketed as No. 19-1412 on June 23, 2020.

### C. The Subsequent *Solano* Decision

On July 22, 2020, this Court issued its opinion in *Solano*. The defendant,

who testified at trial, argued that the district court had erred by instructing the jury

that "any" witness with "an interest in the outcome" of the trial had "a motive to

testify falsely." 966 F.3d at 186. The jury instructions at Solano's trial discussing

"any witness" with "an interest in the outcome" were virtually identical to those in

Johnson's case:

> [I]n evaluating the credibility of the witnesses, you should take into
> account evidence that the witness who testified may benefit in some[]
> way in the outcome of the case. Such ***an interest in the outcome***
> ***creates a motive on the part of the witness to testify falsely***, may
> sway the witness to testify in a way that advances his own interest.
> Therefore, if you find that ***any*** witness who[se] testimony you are

7

considering may have an interest in the outcome of this trial, then you
should bear that factor in mind when evaluating the credibility of his
or her testimony and accept it with great care.

Now, this is not to suggest that every witness who has an interest in
the outcome of the case will testify falsely. There are many people
who no matter what their interest…in the outcome [of] a case may be
would not testify falsely. It is for you to decide based on your own
perceptions and common sense to what extent, if at all, the witness's
interest has affected or colored his or her testimony.

*Id.* at 192 (emphasis original); *see* (Ex.G, Tr.2690). However, unlike in Johnson's

case, the district court did not expressly highlight that the defendant has an interest

in the outcome, and instead merely mentioned that he had testified even though he

was not required to do so, and reminded the jury of the presumption of innocence:

The defendant was not obligated to call witnesses on his behalf, nor
was he obligated to testify on his behalf. But he was permit[ted] to do
so. In this case the defendant decided to testify.

It is the prosecution's burden to prove the defendant guilty beyond a
reasonable doubt. That burden remains with the prosecution
throughout the entire trial and never shifts to the defendant. The
defendant is never required to prove that he is innocent.

*Id.* at 193; *compare* (Ex.G, Tr.2693-94).

This Court held these instructions unconstitutional under *United States v.*

*Gaines*, 457 F.3d 238 (2d Cir. 2006) and its progeny. The Court explained that

two "bedrock constitutional principles" in criminal trials are "that a defendant has

the right to, but is not required to, testify in his own defense," and "that the

defendant is presumed innocent until proven guilty." *Solano*, 966 F.3d at 194.

The *Gaines* Court recognized that "*an instruction that the defendant has a motive*

8

*to testify falsely undermines the presumption of innocence.… **An innocent defendant has a motive to testify truthfully**.*" *Id.* (emphasis in *Solano*).

*Solano* emphasized that this logic was not limited to instructions that singled out the defendant. Instructing the jury "that a witness's interest 'in the outcome of the case…creates a motive…to testify falsely'" and "that this applies to 'any witness'" is unconstitutional, because "[i]t is a matter of common sense that the defendant in a criminal case has a profound interest in its outcome; an instruction indicating to the jury that that interest gives him a motive to testify falsely is contrary to the presumption of innocence." *Id.* at 197.

The Court found the error plain and vacated the conviction. The key issue was whether the defendant knew that the container he was transporting contained narcotics and what he had said about that post-arrest. *Id.* at 197-98. There was a "reasonable probability that Solano was prejudiced by" the defective instruction because of "serious issues concerning the credibility of Solano's denial[s]" on the witness stand. *Id.* at 186, 199-200. As to the fourth plain-error factor, the Court held that the instructions "seriously affect[ed] the fairness, integrity, or public reputation of [the] judicial proceedings" by "eroding the presumption of innocence." *Id.* at 200.

9

### D. Johnson's *Solano* Motion

On August 4, 2020, Johnson filed a motion requesting leave to file a late petition for panel rehearing based on *Solano* and attaching the proposed petition. (Dkt.157-1).[2] Johnson argued that there was "good cause" to grant the motion and that it would be manifestly unjust to allow his conviction to stand notwithstanding *Solano*. Specifically, Johnson argued that the instructions at his trial were clearly unconstitutional under *Solano* (and even more problematic than those in *Solano* because they explicitly linked the defendant's "interest in the outcome" to a "motive to lie"); that his trial was unfair because *Solano* established that he was deprived of the presumption of innocence; and that he was substantially prejudiced by the unconstitutional instruction because if the jury had believed his testimony, it would have had to acquit him. (Motion.14-15); *see also* ([Proposed] Petition at 7-8, 11, 14-17). He also pointed out that this Court equates the "plain-error" standard applied in *Solano* with the "manifest-injustice" showing required to obtain relief based on a new decision on an issue not raised in one's merits briefs on appeal. (Motion.14). Finally, Johnson pointed out that although he had not previously raised the issue in his appeal, *Solano* was the first precedential opinion to hold a similar instruction unconstitutional, and under the law at the time his

---

[2] Johnson's motion and proposed petition for panel rehearing (Dkt.157-1) are cited herein as "Motion" and "[Proposed] Petition," respectively. "Opp." signifies the government's opposition to Johnson's motion (Dkt.159).

principal briefs were filed, his jury instructions appeared to be lawful. (Motion.15-21).

On August 14, the government opposed the motion. (Dkt.159). Its opposition conceded or failed to contest every material assertion in Johnson's motion, including:

- The Court has discretion to grant Johnson's motion and consider his *Solano* argument on the merits (Opp.12-13);

- Johnson's instruction was substantively identical to the jury charge invalidated in *Solano* and therefore unconstitutional (Motion.12-14);

- Johnson's testimony was material: if the jury had believed him, it would have had to acquit on both fraud theories (Motion.14-15);

- The manifest-injustice standard applicable to Johnson's motion is identical to the plain-error test (Motion.14; Opp.13-14); and

- Johnson's jury instructions, like those in *Solano*, "eroded the presumption of innocence" and "seriously affected the fairness, integrity, or public reputation of the judicial proceedings." (Motion.2).

The government made essentially two arguments against relief. First, it stated that an earlier summary order, *United States v. Munoz*, 765 F. App'x 547 (2d Cir. 2019), denied a challenge to a nearly identical instruction. (Opp.13-14). But *Munoz* is non-precedential and precedes *Solano*—and the government conceded that the instruction at Johnson's trial doesn't survive *Solano*, which held a similar instruction manifestly unjust.

Second, it made the circular argument that (1) Johnson did not previously raise his *Solano* argument, so he must show a manifest injustice to prevail, and (2)

11

he cannot show a manifest injustice because he did not previously raise the argument. (Opp.15-16). This contention, however, is obviously wrong, because if it applied, no one could ever establish manifest injustice. In any event, the government conceded it would have made little sense for Johnson to raise the argument in his appeal, because "no case before *Solano* held that an 'interest-in-the-outcome' instruction like the one here [was] unconstitutional" (Opp.15), and the argument probably would have failed under pre-*Solano* cases (Opp.13-15).

On August 21, 2020, at 10:05 a.m., Johnson filed a reply brief identifying the flaws in the government's opposition discussed above. (Dkt.162).

At 1:57 p.m. the same day, Judge Lohier issued a three-sentence order denying the motion without explanation:

> Appellant moves for leave to file a late petition for rehearing. The Government opposes the motion.

> IT IS HEREBY ORDERED that the motion is DENIED.

(Dkt.165).

### E. The *Tapia* Decision

One business day later, in *Tapia*, this Court issued a summary order *granting* a nearly identical request for *Solano* relief. The defendant in *Tapia* was convicted on drug charges, despite testifying at trial that she didn't know that a bottle she transported contained cocaine. The jury was given an instruction identical to the one in *Solano*. The defendant did not object at trial but challenged the instruction

12

in her appeal.  In a summary order issued on March 31, 2020, this Court affirmed her conviction and rejected her argument on plain-error review.  *See United States v. Tapia*, 799 F. App'x 80 (2d Cir. 2020).  The defendant did not seek panel or en banc rehearing or certiorari.

However, on August 3, 2020, she filed a motion to recall the mandate and for en banc review, arguing that her conviction should be vacated based on *Solano*. The government opposed, but this Court recalled the mandate, vacated the defendant's conviction, and denied the motion for en banc rehearing as moot.  The Court observed that its power to recall a mandate is "'to be exercised sparingly' in order to protect the finality of judicial proceedings and is 'reserved for exceptional circumstances.'"  2020 WL 4931448 at *1 (quoting *Sargent v. Columbia Forest Prod., Inc.*, 75 F.3d 86, 89 (2d Cir. 1996)).  Despite this exacting standard, it found that the *Solano* claim warranted recall of the mandate. 2020 WL 4931448 at *1.

As to the merits, the Court held that under *Solano*, Tapia was entitled to a new trial under the plain-error standard because "[t]he interested witness charge used in Tapia's trial "impute[d] a motive to testify falsely to 'any' interested witness and thereby encompasse[d] a testifying defendant," was identical to the charge used in *Solano*, and therefore was plainly erroneous."  *Id.* at *2 (quoting *Solano*, 966 F.3d at 197).  The Court found "that the erroneous jury instruction affected Tapia's substantial rights, and that this error seriously affected the fairness

13

of the judicial proceedings." 2020 WL 4931448, at *2. The Court reasoned, *inter alia*, that "[w]hether Tapia knew that the bottle she transported to the United States contained cocaine was the key issue at trial," and that her "credibility was squarely at issue." *Id.* Accordingly, the Court concluded "based on *Solano* and the circumstances of Tapia's trial" that "the district court's interested witness charge was plainly erroneous, and merits vacatur of Tapia's conviction." *Id.*

## ARGUMENT

Johnson requests that the Court reconsider Judge Lohier's order pursuant to Federal Rule of Appellate Procedure 27(c), which provides that "[t]he court may review the action of a single judge" who "act[s] alone on any motion."[3] Johnson's conviction should be vacated because it was plainly unconstitutional under *Solano*—which the government did not even try to dispute—and allowing it to stand would be manifestly unjust. Moreover, the order here directly conflicts with this Court's decision in *Tapia* vacating a similarly situated defendant's conviction. Accordingly, either the panel or the Court en banc should reconsider the order and vacate Johnson's conviction because such relief "is necessary to secure or maintain uniformity of the court's decisions." Fed. R. App. P. 35.

---

[3] *See also* Fed. R. App. P. 27(b) (permitting "motion to reconsider" any "motion for a procedural order"); Local Rule 27.1(g) (such motions must be "filed within 14 days after the date of the order").

## I.  JOHNSON'S CONVICTION WAS PLAINLY UNCONSTITUTIONAL UNDER *SOLANO* AND SHOULD BE VACATED

It is indisputable that this Court has discretion to vacate Johnson's conviction based on the intervening decision in *Solano*, and that Johnson's failure to raise the instructional issue earlier in his appeal does not bar such relief.  This Court has granted petitions for rehearing (or otherwise granted relief) in criminal cases where the relief is supported by an intervening precedential decision, even though the defendant did not raise the issue in his principal appellate briefs.  *See, e.g.*, *United States v. Balde*, 943 F.3d 73, 80 (2d Cir. 2019) (granting petition for rehearing based on "new arguments not addressed in [petitioner's] appellate briefing" due to an intervening Supreme Court decision); *see also United States v. Draper*, 553 F.3d 174, 179 n.2 (2d Cir. 2009) (Sotomayor, J.) (vacating conviction based on supplemental argument not raised in "initial appeal briefs"); *United States v. Babwah¸* 972 F.2d 30, 35 (2d Cir. 1992) (reversing conviction based on argument not raised in appellate briefs).

It is also indisputable that the standard Johnson must satisfy—"manifest injustice"—is equivalent to the standard the *Solano* and *Tapia* defendants satisfied—"plain error."  For example, in *Draper*, this Court explained that because "a finding of plain error implicates a 'manifest injustice,'" the Court will consider an "argument[] not raised on appeal" if it is based on error that is "plain." *Draper*, 553 F.3d at 179 n.2; *see also id.* ("equating manifest injustice with the

15

plain error standard of review" based on *United States v. Quintana*, 300 F.3d 1227, 1232 (11th Cir. 2002)).

And it could not be clearer under *Solano* that Johnson has established plain error and, therefore, manifest injustice. Indeed, the government all but conceded as much in its opposition to Johnson's motion.

*First*, the "interest-in-the-outcome" instructions at Johnson's trial were substantively identical to those held unconstitutional under *Solano*. As in *Solano*, Johnson's instruction said that "[i]n evaluating the credibility of" *any* witness, the jury "should take into account any evidence that the witness may benefit in some way from the outcome of the case"; that "[s]uch an interest in the outcome creates a motive to testify falsely"; and that "you should bear that factor in mind when evaluating the credibility of his or her testimony and accept it with great care." (Ex.G, Tr.2690); *compare Solano*, 966 F.3d at 192.

If anything, the instruction in Johnson's trial was even more problematic because the district court explicitly linked the defendant's interest to a motive to lie, directing the jury to "scrutinize the defendant's testimony ***just as you would the testimony of any other witness with an interest in the outcome of the case***, taking account of all the factors I previously described." (Ex.G, Tr.2693-94) (emphasis added). By contrast, in *Solano* the district court merely pointed out that the defendant had testified even though he was not obligated to do so, and (unlike

16

here) actually reminded the jury of the government's burden of proof and that the defendant "is never required to prove that he is innocent." 966 F.3d at 193. Thus, it is indisputable that the district court committed constitutional error under *Solano*, and the government did not contest the point.

*Second*, the prejudice was clearly substantial, given the centrality of Johnson's testimony to the jury's decision as to whether he intended to defraud Cairn, and whether he knowingly lied (or helped others lie) to Cairn. *See generally* (Motion.14-15; [Proposed] Petition at 2-8, 15-17). The government did not even attempt to argue otherwise in its opposition; remarkably, it didn't even mention the substance of Johnson's testimony. That is undoubtedly because Johnson's testimony was so obviously material. For example, Johnson testified that he had never seen the documents purporting to create the alleged fiduciary-like duty (Tr.1859); that he understood HSBC and Cairn to be counterparties (Tr.2318, Tr.1926-27); and that he had no intent to—and did not—misuse Cairn's information for HSBC's benefit (Tr.2332-33, Tr.2171). Had the jury believed this testimony, the government's misappropriation theory would have failed. Johnson also testified that he made no misrepresentation to Cairn about whether HSBC would or wouldn't "ramp" the fix (Tr.1916-19, Tr.2204-05), and that, in any event, on December 7 shortly before 3pm he suggested that HSBC *stop* buying to "reduce buying pressure" on the pound's price. (Tr.2053-54). This testimony, if believed,

defeated the government's right-to-control theory.

*Third*, *Solano* also establishes that the jury in Johnson's case was instructed to assess his credibility in ways that "erode[d] the presumption of innocence" and "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." 966 F.3d at 200. The government did not dispute this point, either.

*Finally*, Johnson should not be penalized because he did not challenge the "interest-in-the-outcome" instruction earlier in his appeal. As the government conceded in its opposition, *Solano* was the first case to invalidate jury instructions similar to Johnson's, and Johnson probably would have *lost* any challenge to the instruction. Indeed, in *Munoz*, as the government itself pointed out, this Court "found on de novo review" that an instruction "like the one here" "was not prejudicial" because the interested-witness/motive-to-lie directive was separated in time from the defendant's-testimony instruction. (Opp.13-14); *see Munoz*, 765 F. App'x at 552. This Court's initial decision in *Tapia* likewise had rejected a challenge to the instruction held unconstitutional in *Solano*. And the only relevant controlling authority on the books when Johnson filed his appeal approved instructions like the one in his case: In *Gaines*, 457 F.3d at 249 & n.9, the Court "suggest[ed]" such an instruction; *United States v. Brutus*, 505 F.3d 80, 88 & n.7 (2d Cir. 2007), reaffirmed that this Court had "no problem" with the instruction suggested in *Gaines* and given at Johnson's trial.

18

Thus, even apart from the conflicting result in *Tapia*, it would be manifestly unjust—indeed, a perversion of justice—to deny relief because Johnson did not make an argument the government admits would likely have failed.

## II.   THE DENIAL OF JOHNSON'S *SOLANO* MOTION SQUARELY CONFLICTS WITH THIS COURT'S DECISION IN *TAPIA* AND UNDERMINES FAIRNESS, INTEGRITY, AND THE PUBLIC REPUTATION OF CRIMINAL PROCEEDINGS

The unfairness in the disparate treatment of Johnson and Tapia is palpable. Both defendants testified at trial but, as in *Solano*, were deprived of the presumption of innocence by unconstitutional instructions that effectively told the jury they had a "motive to lie" due to their "interest in the outcome." In both cases, as in *Solano*, the defendant's intent was a key element of the charged offenses. In both cases, as in *Solano*, the defendant's testimony was material—the jury would have had to acquit had it credited the testimony. Both defendants were entitled to have their claims reviewed for plain error, which this Court equates with manifest injustice; thus, both defendants should have benefited from *Solano*'s finding of plain error. And both defendants sought relief within 14 days of the *Solano* decision, but months after their own convictions had been affirmed. Yet a single judge denied Johnson *any* opportunity even to have the Court review his *Solano* claim, whereas the panel in *Tapia* vacated the defendant's conviction.

It is true that Johnson objected to the unconstitutional instruction at trial but did not challenge it earlier on appeal, whereas Tapia failed to object at trial but did

19

raise the issue in his appeal. But that is a distinction without a difference. As explained, the same standard of review applies to both claims, and the government has essentially conceded that if Johnson had raised the issue, he would have lost under the law in effect at the time his appeal was briefed and argued. (Opp.13-15; Motion.15-20). The only decision addressing an instruction virtually identical to Johnson's (*Munoz*, a 2019 summary order) rejected the challenge, and the initial decision in Tapia's appeal rejecting her argument further underscores the point. Johnson should not be penalized for failing to predict that at some point a challenge would succeed. Hindsight is always 20-20, but Johnson's right to a fair trial should not be denied just because he devoted the limited space in his appellate briefs to other issues that appeared more likely to carry the day.

What is more, Johnson has an even *stronger* case for relief under *Solano* than the defendant in *Tapia*, in two ways:

*First*, the instruction at Johnson's trial was more problematic than the one in *Solano* and *Tapia*. As explained (*supra* at 10, 16-17), the jury at Johnson's trial was directed to "scrutinize" his testimony "just as you would the testimony of any other witness with *an interest in the outcome of the case*" (Ex.G., Tr.2693-94) (emphasis added), after having been told that witnesses with such an interest have a "motive to testify falsely." In other words, the jury was expressly instructed that Johnson had a motive to lie. The instructions in *Solano* and *Tapia*, by contrast, did

20

not directly link the defendant's-testimony instruction to the "interest-in-the-outcome" and "motive-to-lie" instruction, and instead expressly reminded the jury of the defendant's presumption of innocence. *See Solano*, 966 F.3d at 193; *Tapia*, 2020 WL 4931448 at *2.

*Second*, unlike in *Tapia,* this Court still has jurisdiction over Johnson's case. Here, the mandate has not issued and was stayed because Johnson's petition for certiorari presents "a substantial question." Fed. R. App. P. 41(b). There is no need to recall the mandate and thus no need to satisfy the exceedingly high "exceptional circumstances" required "to protect the finality of judicial proceedings." *Tapia*, 2020 WL 4931448, at *1.

In sum, to the extent there is any difference between Johnson's *Solano* claim and the one in *Tapia*, Johnson has a stronger case for relief. Judge Lohier's order squarely conflicts with the *Tapia* Court's decision, sends mixed messages about the state of the law in the Circuit and deprives Johnson of his rights to a fair trial and equal justice under law.

## CONCLUSION

The presumption of innocence "is not only one of the most fundamental principles of our criminal justice system, but also one of the principles most widely known and understood by the public at large." *United States v. Mehta*, 919 F.3d 175, 183 (2d Cir. 2019). No fair-minded judge would have hesitated to vacate Johnson's conviction had *Solano* been decided before his appeal, given how critical his testimony was to the jury's assessment of the disputed elements, especially his own scienter, and how fundamental the presumption of innocence is to a fair criminal trial. A person's liberty should not turn on an accident of timing, as the *Tapia* panel rightly concluded. Fundamental fairness demands that similarly situated defendants be treated similarly: "The integrity and legitimacy of our criminal justice system depend upon consistency, predictability, and evenhandedness." *Hughes v. United States*, 138 S. Ct. 1765, 1779 (2018) (Sotomayor, J. concurring).

There is no principled reason to deny Johnson the relief this Court granted to the defendant in *Tapia*, and it would be manifestly unjust to let Johnson's conviction stand. The Court should grant reconsideration and vacate Johnson's conviction.

Dated:  New York, New York
        August 31, 2020

/s/Alexandra A. E. Shapiro
Alexandra A.E. Shapiro
  *Counsel of Record*
Eric S. Olney
Jacob S. Wolf
SHAPIRO ARATO BACH LLP
500 Fifth Avenue, 40th Floor
New York, New York 10110
(212) 257-4880

Frank H. Wohl
John R. Wing
LANKLER SIFFERT & WOHL LLP
500 Fifth Avenue
New York, New York 10110
(212) 921-8399
*Attorneys for Defendant-Appellant*
*Mark Johnson*

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION

I hereby certify that:

1. This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 5,187 words.

2. This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.

Date: August 31, 2020

/s/Alexandra A.E. Shapiro
Alexandra A.E. Shapiro

24

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 31, 2020, an electronic copy of this motion of Defendant-Appellant for panel or en banc reconsideration was filed with the Clerk of Court using the ECF system and thereby served upon the following counsel:

Lauren H. Elbert

/s/Alexandra A.E. Shapiro
Alexandra A.E. Shapiro
